IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CUSTOM BLENDING AND
PACKAGING OF ST. LOUIS, LLC,

Plaintiff,

v.

STEVEN MOSER, JR.,  et al.,

Defendants.                                              No. 08-0592-DRH

MEMORANDUM and ORDER

HERNDON, Chief Judge:

### I. Introduction and Background

Pending before the Court are two motions for summary judgment: (1) Plaintiff/Counter-Defendant's motion for summary judgment (Doc. 97) and (2) Defendants DAC Industries, Inc., DAC Aerosol & Liquid Fill, Inc., and Dennis Litz's motion for summary judgment (Doc. 98).  Based on the following, the Court denies both motions for summary judgment.

Originally, Custom Blending and Packaging of St. Louis, LLC ("Custom Blending") filed suit against Steven Moser Sr., Steven Moser Jr., DAC Industries, Inc. ("DAC") and DAC Aerosol & Liquid Fill, Inc. ("DAC Aerosol") on August 19, 2008 (Doc. 2).[1]  On September 5, 2008, Custom Blending filed its Amended Complaint

---

[1]On August 28, 2008, the Court dismissed without prejudice Plaintiff's complaint with leave to amend to address/cure the deficiencies the Court found when it conducted its routine jurisdictional review (Doc. 3).

(Doc. 4). That Amended Complaint contained seven counts: Count I - breach of fiduciary duty; Count II - defamation; Count III - tortious interference with business expectancy; Count IV - tortious interference with contract; Count V - violation of the Illinois Trade Secrets Act ("ITSA"); Count VI - conspiracy - civil; and Count VII - injunctive relief.

On March 30, 2009, DAC and DAC Aerosol filed a compulsory counterclaim based on breach of contract for damages against Custom Blending (Doc. 34). In the counterclaim, DAC and DAC Aerosol allege that "the parties entered into an supply agreement whereby in exchange for payment from DAC, Plaintiff, Custom Blending and Packaging of St. Louis, LLC ("CBP") was required to order, fill and supply DAC certain aerosol cans containing petroleum product for various commercial, automotive and household uses." (Doc. 34, ¶ 2). Further, the counterclaim states: "in numerous shipments before and after the filing of this suit, the Plaintiff has either billed the Defendant for cans not received, has not properly credited the Defendants [sic] account for those omitted cans, filled cans with adulterated and illegal materials, and/or attempting to ship cans without proper and updated labeling." (Doc. 34, ¶ 6). Defendants claim that they have "paid for product not or incorrectly produced and those payments have not been credited back to Defendants [sic] account." Further, Defendants claim that "CBP's failure to produce the necessary product subject to the supply agreement, Defendant, DAC, has suffered consequential damages, including but not limited to, cancelled contracts with buyers, loss of customers and other incidents in attempting to cover these losses." (Doc. 34,

¶ 8).

On April 16, 2009, the Court issued an Order granting in part and denying in party various motions to dismiss and allowed Custom Blending leave to file another amended complaint that corrected, designated, and divided the remaining claims (Doc. 36).  Thereafter, Custom Blending filed Second and Third Amended Complaints (Docs. 37 & 62).  The Fourth Amended Complaint, filed on January 15, 2010, contains eight counts (Doc. 80).  Count I is for breach of fiduciary duty against the Mosers; Count II is for defamation against Moser Jr.; Count III is for tortious interference with business expectancy against the Mosers, DAC and Litz; Count IV is for tortious interference with contract against the Mosers, DAC Aerosol and Litz; Count V is for violations of Illinois Trade Secrets Act against the Mosers; Count VI is for civil conspiracy against all Defendants; Count VII is for injunctive relief against the Mosers, DAC and DAC Aerosol; and Count VIII is for breach of contract for goods sold and delivered and suit on account against DAC.

Thereafter, the parties filed their respective motions for summary judgment.  Custom Blending argues that it is entitled to summary judgment on DAC and DAC Aerosol's counterclaim.  DAC, DAC Aerosol and Litz argue that they are entitled to summary judgment on Counts III, IV and VI of Custom Blending's Fourth Amended Complaint.  Both motions are fully briefed and ripe for ruling.  First, the Court address DAC, DAC Aerosol and Litz's motion for summary judgment.

## II.  Facts

Custom Blending is in the business of formulating, blending and

packaging chemicals and aerosols.[2]   Steven Moser Jr. is a former employee of Custom Blending.  Moser Jr. left the employ of Custom Blending on June 26, 2008. He was a manager of production and had responsibility for customer interaction. Steven Moser Sr. is also a former employee of Custom Blending.  Moser Sr. left the employ of Custom Blending in December 2007.  Moser Sr. also acted as a manager.[3]

DAC, a Minnesota Corporation, has been a customer of Custom Blending and regularly purchases product from Custom Blending.  The Mosers along with DAC established DAC Aerosol.  Litz is the owner of DAC and DAC Aerosol.  DAC Aerosol provides services and products to DAC and the general market that were formerly provided by Custom Blending.

Moser Jr. signed a document agreeing that he would comply with all company rules and regulations set forth in Custom Blending's handbook.  The Mosers had access to Custom Blending's trade secrets, including customer information, bidding and pricing information, vendor and supply information, product formulas, methods, operating procedures, production diagrams, and other proprietary and confidential information.   The Mosers, while employed by Custom Blending, serviced the DAC account.  DAC during its relationship with Custom Blending dealt almost exclusively with Moser Jr.

The Mosers, who knew Litz through their employment with Custom Blending, both voluntarily left Custom Blending and went to work for Litz and DAC

---

[2]The members of Custom Blending are Judy Hamilton and Craig Seelman.

[3]Both Mosers had keys to the production facility and codes to the alarm.

Aerosol.  Litz hired Moser Jr. to work at DAC Aerosol on July 1, 2008.  Both Mosers, while employed with Custom Blending and using Custom Blending resources, worked for Litz on behalf of DAC and DAC Aerosol.  As early as October 2007, Moser Jr. was conducting business activity for DAC, DAC Aerosol and Litz on Custom Blending's time and equipment.  At Litz's request, Moser Jr. planned and designed the China Line (an aerosol filling line).  Moser Jr. also developed a business plan for DAC Aerosol; compiled the vendor lists and contacted suppliers and customers on behalf of DAC.  In December 2007, the Mosers and Litz went to dinner together at Ruby Tuesdays near Sullivan, Missouri.  At this dinner, Moser Sr. told Litz that he was leaving Custom Blending.  Litz testified that if they discussed business at that meeting it was about whether they were going to go through with DAC Aerosol.

In early 2008, Litz put a personal down payment on the China Line. Also in early 2008, the Mosers helped Litz find a location for DAC Aerosol in Sullivan, Missouri.  On March 28, 2008, Litz personally and individually signed a lease on the Sullivan property.  The lease has an occupancy date of July 1, 2008.

Moser Jr. testified that he retained attorney Kurt Breeze to form DAC Aerosol.[4]  On May 21, 2008, DAC Aerosol was formed in Missouri.  Litz is the sole owner of DAC Aerosol.  DAC Aerosol's corporate papers identify Moser Jr. as the registered agent and the corporate address as the property that Litz leased in Sullivan, Missouri.  Litz paid from his own funds the May 2008 attorney bill from Mr.

---

[4]Mr. Breeze is counsel of record for Litz, DAC, and DAC Aerosol.

Breeze.

Sometime during April 2008 to June 2008, Litz traveled to China to get the China Line. Litz testified that he did purchase airline tickets for Moser Jr. to go with him so that Moser Jr. could provide input on the China Line. However, Litz testified that Moser Jr. did not go with him to China despite the fact that airline tickets were charged to his credit card account in Moser Jr.'s name and that the ticket was not refunded. Moser Jr.'s April 28, 2008 passport application indicates that he was employed by DAC and the application authorizes the charges for the passport to be billed to Litz's Mastercard. Between March 2008 and April 2008, Litz wrote from his personal bank accounts five personal checks totaling $5,000 to Moser Jr.

In late June 2008, Moser Jr. left Custom Blending's premises and took with him all of Custom Blending's product formulas for DAC and other customers so that he could rewrite them. The formulas were returned to Custom Blending but not rewritten. Litz testified that he did not know the formulas, or blending or filling process. Custom Blending maintained the proprietary formulas for products that were blended and packaged for DAC. Chemisphere, a former Custom Blending vendor that blended DAC and other companies' raw product, blended many of the products and sent the products to Custom Blending for filling, packaging and delivery for DAC. DAC Aerosol now uses Chemisphere to blend the products. Andrew Foley of Chemisphere testified that he obtained the DAC formulas for DAC Aerosol to run from Moser Jr.

Also during April 2008 and June 2008, Moser Jr. ordered and prepared large volumes of product for DAC.  DAC refuses to buy a large quantity of the DAC product that Moser Jr. ordered.  Much of the product is still on the floor at Custom Blending.  Some product has been delivered to DAC, but remains unpaid.

Custom Blending and its principals did not know that Litz and DAC intended to terminate the relationship with Custom Blending; did not know that the Mosers were going to work for Litz, DAC or DAC Aerosol and did not know that DAC Aerosol was formed by the Mosers or that the Mosers would be setting up, operating and creating products for DAC that Custom Blending had created.  Custom Blending learned after Moser Jr. left its employ that Moser Jr. while still employed by Custom Blending, acquired customer and vendor lists, documented business processes and formulas, and worked with Litz to form DAC Aerosol.

### III.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a movant is entitled to summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits, demonstrate there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. **Fed.R.Civ.P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)**. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248, 106 S.Ct. 2505, 91**

**L.Ed.2d 202 (1986)**.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  ***See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)**.  At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008)**.

## IV.  Analysis

**DAC, DAC Aerosol & Liquid Fill, Inc., and Litz's motion**

First, Litz argues that he is entitled to summary judgment because as an individual he cannot beheld liable for the actions of the corporations.  Litz merely argues that he "cannot be held liable for the acts of the corporation he controls absent some finding of misconduct that would allow the Court to pierce the veil of the corporate protection for liability."  He contends that the allegations against him are that he undertook actions for DAC and DAC Aerosol, for which they benefitted, which in turn benefitted him as the owner of these corporations.  Custom Blending counters that there is a singularity of interest in this case – those of Litz and that each of Litz's "actions may have been considered to have been undertaken singly in his individual capacity, or jointly in his individual and corporate agency capacities."

In Illinois, "a corporation is a legal entity separate and distinct form its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated. ***Van Dorn Company v. Future Chemical and Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985)(citing *Main Bank of Chicago v. Baker*, 427 N.E.2d 94 (Ill. 1981))**.  Under the law of Illinois, a party seeking to disregard the corporate entity because the targeted corporation is merely the alter ego of the dominating personality must show that (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity." ***Melko v. Dionisio,* 580 N.E.2d 586, 594 (1991)**.

A corporate entity will be disregarded if it would otherwise present an obstacle to the protection of private rights or if the corporation is an alter ego or business conduit of the governing or dominant personality. ***State of Illinois v. V & M Indus.*, 700 N.E.2d 746, 751 (Ill. App. 1998)**.  "Some element of unfairness, something akin to fraud or deception, or the existence of compelling public interest must be present in order to disregard or pierce the corporate veil." ***Id.* (citing *Berlinger's Inc. v. Beef's Finest, Inc.*, 372 N.E.2d 1043, 1048 (Ill. App. 1978))**. Whether to pierce the corporate veil is a matter of the trial court's discretion. ***See Crum v. Krol,* 425 N.E.2d 1081, 1089 (Ill. App. 1981) (holding that "the trial court did not abuse its discretion in allowing Crum and Thomas Crum &**

**Associates to be treated as a single entity**"). Under Illinois law, piercing of the corporate veil on an alter ego theory is available only where failing to provide such relief would promote injustice or inequity. "In determining whether to disregard a corporate entity, a court should consider the following variables, with no single factor being determinative: (1) inadequate capitalization, (2) the failure to issue stock, (3) the failure to observe corporate formalities, (4) the payment of dividends, (5) the insolvency of the debtor corporation at the time, (6) the nonfunctioning of other corporate officers or directors, (7) the absence of corporate records, and (8) whether the corporation is a mere facade for the operation of dominant stockholders. *Ted Harrison Oil Co.,* 247 Ill.App.3d at 795, 187 Ill.Dec. 441, 617 N.E.2d at 902." ***V & M Industries, Inc*. 700 N.E.2d at 751**.

First, the Court notes that despite moving for summary judgment on this issue, Litz did not develop this issue. He merely asserts that he cannot be liable unless the Court pierces the corporate veil. Based on this deficiency, the Court could deny the motion. However, the Court finds that the record contains issues of material fact which preclude summary judgment as to Litz's individual liability. Here, Custom Blending sued Litz individually and as a representative of DAC and DAC Aerosol, the two corporations that he owns. Custom Blending asserts that Litz individually interfered with its business expectancy and contracts and that Litz individually conspired with the Mosers. The record is peppered with actions taken by Litz and the Mosers. In fact, the record reflects that Litz individually paid Moser

Jr. $5,000; that he along with the Mosers planned to start DAC Aerosol, that he bought himself and Moser Jr. tickets to travel to China to acquire the China Line for DAC Aerosol. Further, he named Moser Jr. as the registered agent of DAC Aerosol. In explaining his accounting for the trip to China, Litz stated that he would run those expenses through DAC and he also stated that he ran the expenses for the DAC Aerosol lease through DAC. Based on this, the Court finds that there are questions of material fact as to whether there was such a unity of interest and ownership that the separate personalities of the corporations and Litz no longer exist. Litz did not offer any evidence to the contrary. Thus, the Court denies Litz's motion as to his individual liability.

Next, DAC and Litz move for summary judgment on Count III of the Fourth Amended Complaint arguing that Custom Blending cannot make a prima facie case. In particular, DAC and Litz argue that there is no allegation that the business expectancy of Custom Blending is valid; that it is unclear what business expectancy is being referred to; that the damages are deficient; and that there is no evidence of their conduct in regards to this claim. Custom Blending counters that it has established a prima facie case of tortious interference of business expectancy.

The elements of a cause of action for tortious interference with a business expectancy under Illinois law are as follows: (1) a plaintiff's reasonable expectation of entering into a valid business relationship; (2) a defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to

the plaintiff resulting from such interference. *See **Botvinick v. Rush University Medical Center**, 574 F.3d 414, 417 (7th Cir. 2009)(citing **Fellhauer v. City of Geneva**, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (Ill. 1991)); **Clarage v. Kuzma**, 342 Ill.App.3d 573, 276 Ill.Dec. 995, 795 N.E.2d 348, 356 (Ill. App. Ct. 2003); **Labate v. Data Forms, Inc.**, 288 Ill.App.3d 738, 224 Ill.Dec. 530, 682 N.E.2d 91, 94 (Ill. App. Ct. 1997)*.

Taking the facts in the light most favorable to Custom Blending, the Court finds that there are questions of material fact that preclude summary judgment on this claim. Custom Blending has provided evidence that it intended to continue to do business with its customers Sunnen & Chemisphere; that these customers quit doing business with Custom Blending after Moser Jr. left to work for DAC Aerosol; and that it has suffered damages. The record also reflects that the Mosers were working for Custom Blending at the same time they were working with Litz and DAC in acquiring the China Line to form DAC Aerosol. Further, the Court finds that there are questions of material fact as to the intentions of the Mosers, DAC and Litz in forming DAC Aerosol with respect to Custom Blending. "A defendant is entitled to the protection of privilege of competition provided that the defendant has not employed a wrongful means or is not motivated solely by malice or ill will." ***Cromeens, Holloman, Sibert, Inc. v. AB Volvo**, 349 F.3d 376, 399 (2003)(quoting **Soderlund Bros., Inc. v. Carrier Corp.**, 663 N.E.2d 1, 7-8 (1995))*. Accordingly, the Court denies DAC and Litz's motion for summary

judgment on this issue.

Next, Defendants DAC Aerosol and Litz move for summary judgment on Count VI, the tortious interference with contract claim, arguing that there was no enforceable contract to breach and the actions of DAC Aerosol were independent from any agreement between Custom Blending and DAC. Custom Blending counters that there was a valid and enforceable contract between it and DAC.

In order to establish a prima facie tortious interference with contractual relationships claim in Illinois, a plaintiff must demonstrate (1) the existence of a valid and enforceable contract; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages. **See *Prince v. Zazove*, 959 F.2d 1395, 1397 (7th Cir.1992) (citations omitted)**.

The Court finds that questions of material facts are present and that summary judgment is not proper as to this claim. Despite, DAC Aerosol and Litz's assertions to the contrary, there appears to have been a valid supply agreement in place between the parties. In fact, DAC and DAC Aerosol filed a compulsory counterclaim against Custom Blending arising out of *this* very supply agreement.[5] Moreover, the record demonstrates that DAC Aerosol now provides DAC the same

---

[5]Paragraph 3 of the counterclaim states: "The parties operate under the terms of this supply agreement for over a year prior to the filing of this suit in the District Court, in that CBP made several shipments of the aerosol cans to the DAC and DAC made timely and full payment for those shipments." (Doc. 34, p. 2).

products and services Custom Blending used to provide to DAC.  Thus, the Court

finds that a reasonable jury might conclude that DAC Aerosol and Litz induced DAC

to breach its contract with Custom Blending so that DAC Aerosol could provide

services to DAC.

Lastly, Defendants contend that they are entitled to summary judgment

on Count VI, the civil conspiracy claims.  Specifically, Defendants argue that Custom

Blending cannot show that Defendants performed an unlawful underlying action in

furtherance of the conspiracy.  Defendants contend that they lawfully competed in the

business market for services or products provided by Custom Blending.  Custom

Blending opposes the motion arguing that there is clear evidence  demonstrating an

agreement and actions in further of the agreement.

To show a civil conspiracy, Custom Blending must show an agreement

to accomplish either an unlawful purpose or a lawful purpose by unlawful means.

***Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010)(citing *McClure***

***v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 241 Ill.Dec. 787, 720**

**N.E.2d 242, 258 (1999))**.  The purpose of civil conspiracy is "to extend liability in

tort beyond the active wrongdoer to those who have merely planned, assisted or

encouraged the wrongdoer's acts." ***Id.* (citing William L. Prosser & John W. Wade,**

**Cases and Materials on Torts § 46, at 293 (5th ed. 1971))**.  Although the

agreement between the two or more persons "is a necessary and important element

of a cause of action for civil conspiracy," "the gist of a conspiracy claim is not the

agreement itself, but the tortious acts performed in furtherance of the agreement."

***Id.*** **(citing Prosser & Wade, supra)**.

Here, there are questions of material fact as to whether there was a civil conspiracy.  As set forth many times supra, the record reflects that the Moser Jr. Moser Sr. DAC and Litz created a business that directly competes with Custom Blending.  The record also reflects that while creating DAC Aerosol with DAC and Litz, the Mosers were employed by Custom Blending.  There is a dispute as to whether the Mosers, DAC and Litz used Custom Blending 's information, including client lists, formulas, vendor lists, business process information and Custom Blending employees to facilitate the new business and whether the DAC Defendants were aware/approved of this conduct.  Further, the record shows that DAC ordered $300,000 of Custom Blending product through Moser Jr. and that there is a dispute as to this transaction.  The record also reflects that Custom Blending lost customers as a result of Defendants' alleged actions.  Thus, the Court also denies Defendant's motion for summary judgment on this count.

**Custom Blending's motion**

Custom Blending maintains it is entitled to summary judgment as DAC has produced nothing to support its counterclaim.  DAC and DAC Aerosol oppose the motion arguing that evidence has been submitted on all elements and issues of material fact remain.

In Illinois, "the elements of a breach of contract cause of action are '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4)

Page 15 of 17

performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'"

***Ass'n Ben. Servs. v. Caremark Rx, Inc.***, **493 F.3d 841, 849 (7th Cir. 2007)**

**(citations omitted)**.

Construing the evidence in the light most favorable to DAC and DAC Aerosol, the Court finds that there are questions of material fact which preclude summary judgment on the counterclaim.  The dispute is fact laden and not subject to resolution as a matter of law.  While the parties agree that there was a supply agreement, there are several disputes as to the parties' conduct in regards to this counterclaim.  For instance, there are questions of fact as to who produced the "bad" product DAC and DAC Aerosol complain of in the counterclaim.  DAC and DAC Aerosol presented letters that indicate that some of DAC's costumer's received "bad" product and that one client stop using DAC because of the "bad" product.[6]  Further, there are questions of fact as to the accounting and billing.  Based on all of the disputed facts surrounding this case, the Court finds that this matter cannot be resolved by summary judgment.

### V.  Conclusion

Accordingly, the Court **DENIES** both motions for summary judgment: Plaintiff/Counter-Defendant's motion for summary judgment (Doc. 97) and (2) Defendants DAC Industries, Inc., DAC Aerosol & Liquid Fill, Inc., and Dennis Litz's

---

[6]Custom Blending without citing to any Rules of Evidence or case law objects to the use of these letters as inadmissible hearsay.  While there may be some merit to Custom Blending's argument as to these letters during the summary judgment stage, the Court reserves ruling on their admissibility until trial.

motion for summary judgment (Doc. 98).  The Court **SETS** this matter for Final

Pretrial Conference on Thursday, January 13, 2011 at 1:30 p.m. Further, the parties

shall contact Magistrate Judge Proud's chambers if they feel that a settlement

conference would be beneficial.

> **IT IS SO ORDERED.**

> Signed this 16th day of November, 2010.

David R. Herndon
2010.11.16
14:24:34 -06'00'

**Chief Judge**
**United States District Court**